## MUTUAL LOAN & BANKING COMPANY *v.* HOPE *et al.*

1. Where a creditor made a loan of money and took as security therefor a deed to land from the borrower, and also a written instrument executed by two other persons, whereby they obligated themselves to make the land bring the amount of the loan ; and where, after allowing the borrower to sell off a portion of the land and receiving some of the proceeds thereof, the creditor entered into an agreement with him and still another person, whereby he assumed the payment of the balance due upon the debt and obtained title to the un-

sold portion of the land, subject to the creditor's security deed; and where thereafter the creditor reduced this claim against this person to judgment, conveyed to him the unsold part of the land, caused it to be sold by the sheriff as his property, and purchased it at the judicial sale: *Held*, that the two original guarantors were discharged and no longer liable on their undertaking; and this is true whether the first sales of parts of the land were made with their consent or not.

2. Under the facts of this case as to which there was no dispute, and the law applicable thereto, the verdict in favor of the defendants was demanded and ought to stand, whether any error of law was committed at the trial or not.

Argued January 10,—Decided January 29, 1901.

Complaint. Before Judge Candler. Fulton superior court. August 4, 1900.

*Arminius Wright* and *C. W. Smith*, for plaintiff.
*C. J. Simmons*, for defendants.

Lewis, J. The Mutual Loan & Banking Company brought suit for $5,000, in Fulton superior court, against George M. Hope and C. J. Simmons, upon a written contract as follows:

"Atlanta, Ga., Feby. 26, 1891.

"Whereas the Mutual Loan & Banking Company has this day loaned to Dinah O'Neal the sum of forty-eight hundred and fifty dollars, in order that she might pay to George M. Hope the sum of two thousand dollars on account of a debt that she now owes him, and for five pairs of mules this day sold to said Dinah O'Neal by said G. M. Hope, it is hereby agreed that Geo. M. Hope and C. J. Simmons will make the land conveyed by said Dinah O'Neal to said Mutual Loan & Banking Co., to secure said loan, bring the amount of whatever debt said Dinah O'Neal might owe to said Mutual Loan & Banking Company at time of such sale, should said Dinah O'Neal fail to pay her notes at maturity and her property be brought to sale to pay the same. Witness our hands and seals, this Feby. 26, 1891.     Geo. M. Hope. L. S.
    C. J. Simmons. L. S."

The defendants filed pleas denying indebtedness to the plaintiff in any sum, and made special denial of any indebtedness on the contract upon which suit was brought. They further denied the other allegations in the petition, and alleged that the plaintiff released C. J. Simmons, one of the obligors in the contract, by permitting Dinah O'Neal, for a valuable consideration, to sell a portion of the land mortgaged to the plaintiff company, thereby, in effect, re-

leasing the other defendant also. The defendant Simmons, in his separate answer, besides denying the allegations in the petition, averred that the plaintiff, for a valuable consideration, and without his consent, released two parcels of the land embraced in the mortgage to which the contract in question had reference, and that one of the pieces was sold long before he knew anything about the transaction. He also set up that the plaintiff never tendered him a deed to the land described in the mortgage, but tendered him a deed to less than one third of the land so described. He further denied that the land was ever sold as the property of Dinah O'Neal, but alleged, on the contrary, that "Dinah O'Neal, with the consent of the Mutual Loan & Banking Co., sold said property to one J. M. Stewart, who assumed and agreed to pay the debts of said Dinah O'Neal to the Mutual Loan & Banking Company, and the Mutual Loan & Banking Company sued said Stewart and obtained judgment against him on his agreement to pay said debt, and sold said property as the property of said Stewart, and not as the property of said O'Neal." Upon the trial the jury returned a verdict for the defendants; whereupon the plaintiff moved for a new trial on the general grounds, adding thereto on the hearing of the motion an amendment to the effect that the court erred in charging the jury as follows: "Now, if one of them [referring to the defendants] had knowledge and consented to it and the other did not, then it would be a discharge as to the one that did not consent to it, and would not be as to the other, unless the one who did consent to it had no knowledge of the other having knowledge. If one of them had no knowledge of it, and did not consent, and if the other had any knowledge of the fact that he did not know it, and did consent to it, it would discharge both."

Counsel for plaintiff introduced in evidence the mortgage deed from Dinah O'Neal to the Mutual Loan & Banking Company, dated February 26, 1891, conveying a part of land lot No. 47 in the 14th district of Fulton county, Ga., fronting 204 feet on the east side of Fort street, and extending back east, same width as front, along the north side of Buice street, 180 feet; together with 51 notes in connection therewith, dated February 26, 1891, signed by Dinah O'Neal and payable to the Mutual Loan & Banking Company, the first note falling due 22 months after date, and the remainder on the 26th day of each consecutive month thereafter, each of the

notes being for $100, except the last, which was for $78, and all bearing interest from maturity at eight per cent. per annum. Plaintiff also introduced the contract which we have already quoted, and an agreed abstract of a quitclaim deed from the Mutual Loan & Banking Company to the Enterprise Land Company, dated November 20, 1891, conveying part of land lot 47. Plaintiff next introduced a release from the Mutual Loan & Banking Company to George M. Hope and E. A. Robertson, to the "rear end of the remainder of the lot fronting on Fort street," dated March 4, 1893. Also, a deed from Dinah O'Neal to J. M. Stewart, dated March 10, 1893, conveying part of land lot 47, fronting 81 feet on the north side of Pine street and extending north along the east side of Fort street, same width as front, 140 feet, containing the following recital: "This deed is made subject to a loan in favor of the Mutual Loan & Banking Co., which is to be paid by said J. M. Stewart, and when paid said Banking Company [will] either cancel said lien or make a quitclaim deed to said land to said Stewart." Also, the original papers in the suit, and the amendment to the suit of the Mutual Loan & Banking Company against Dinah O'Neal and J. M. Stewart, filed February 9, 1894, upon the 51 notes before referred to, the suit asking for a special lien on the land conveyed to secure the notes. Also, an agreement between the Mutual Loan & Banking Company and J. M. Stewart, stipulating that, in consideration of the withdrawal by Stewart of his defense to the suit brought against him by the Mutual Loan & Banking Company, and his consent that the company take judgment against him for the sum sued for, with costs and attorneys' fees, the judgment shall be a lien only on that part of land lot 47 in the 14th district of Fulton county fronting 81 feet on the north side of.east Pine street and extending north along the east side of Fort street, same width as front, 140 feet; that all other property then owned or thereafter acquired by Stewart or Dinah O'Neal was released from the lien of the judgment; that at the sheriff's sale of the property, the plaintiff would either buy the land or bid enough to make it bring a sum sufficient to satisfy the judgment, and after sale cancel of record any balance due on the fi. fa.; that if plaintiff should become the purchaser of the land, it might sell it at any time for enough to satisfy the judgment, including costs, paving assessment, and interest; that if Stewart should not sell the land within twelve months for enough to

cover these items, he should pay the Mutual Loan & Banking Company five hundred dollars; that until the time that plaintiff or Stewart should sell the property, plaintiff should be entitled to the rents accruing, which were to be credited against the judgment and future interest until the end of twelve months or until the time of the sale; that if plaintiff or Stewart should sell the property within twelve months for more than enough to satisfy the judgment, paving assessment, and interest, the excess should belong to Stewart; that if plaintiff should sell the property within twelve months, it should first offer it to Stewart at the time price to be obtained from the contemplated purchaser, and that if the sale were made there should be at least one quarter paid cash, and the balance in six, twelve, eighteen, and twenty-four months, or in equal annual payments. Also, quitclaim deed from the Mutual Loan & Banking Company to J. M. Stewart, dated April 8, 1895, and recorded April 9, 1895, made for the purpose of levy and sale, conveying land fronting 204 feet on the east side of Fort street, and extending back east, same width as front, 180 feet on the north side of Pine street. Also, sheriff's deed to Mutual Loan & Banking Company, dated November 3, 1896, conveying land fronting 81 feet on the north side of Pine street and extending back north along the east side of Fort street, same width as front, 140 feet. Also, tender of a deed to the property in dispute, from the Mutual Loan & Banking Company to Hope and Simmons, and a demand for the payment of $5,000. Also, quitclaim deed from George M. Hope and Robinson to Dinah O'Neal, dated July 11, 1891. Also, deed from Hope and Robinson to J. M. Stewart, dated March 11, 1893, conveying land fronting 81 feet on the north side of Pine street and extending back north along the east side of Fort street, same width as front, 140 feet.

Such was the documentary evidence introduced by the plaintiff. Among the witnesses who testified at the trial was McBurney, plaintiff's cashier. He swore that Simmons and Hope were directors of the company in 1891, at which time witness was cashier, and that since then they have sustained the relation respectively of attorney and director. He further testified: "I think we got $1,200 of the money that was paid for this lot. The Enterprise Land Company, Mr. Gentry, paid us that money. We credited the $1,200 on Dinah O'Neal's account on this debt. I don't know of my own personal

knowledge that Mr. Simmons or Mr. Hope got any of the money."
J. M. Stewart testified for the plaintiff, that he remembered the
transaction in which the Dinah O'Neal property was sold to him;
that before closing the trade he talked with Simmons and Hope,
and Hope seemed to desire that witness make the trade and be in
control, rather than Dinah O'Neal, as he thought it would be better
for everybody.   Witness was present at Dinah O'Neal's house when
McBurney and Simmons were there, negotiating for the trade.   They
were all inclined to have him buy the property and pay off the money
loaned by the bank to O'Neal.   Witness resold the property to Ryal.
There was some litigation to get Ryal out.   At the time of the ne-
gotiation at Dinah O'Neal's house, witness understood that that was
a settlement of all matters between the parties connected with it,
and that witness was the man to do the paying from that time on.
Remembers signing the contract with the bank, by which he was
to pay the amount of the Dinah O'Neal debt, attorneys' fees, and
five hundred dollars additional, he being released from any other
claims.   At the time of the sale to him, witness was perfectly solv-
ent, and was considered good for anything he promised.   It does
not appear that Hope was present at the meeting at the house of
Dinah O'Neal.   Hiram O'Neal, husband of Dinah, was introduced
by the plaintiff, and swore that Simmons, McBurney, and Stewart
came to his house to negotiate for the sale of a part of the property
mortgaged by his wife to the Mutual Loan & Banking Company.
Simmons said that he represented Hope.   McBurney induced Dinah
O'Neal to let Stewart take the property.   Witness remembered the
transaction when the Enterprise Land Company bought a piece of
the land from his wife.   He talked to Simmons about it, because
Simmons was his lawyer.   George M. Hope, one of the defendants,
swore that he signed the contract upon which suit was brought,
but never had anything to do with the negotiations for the sale of
the land to the Enterprise Land Company, and knew nothing about
it until after the sale was made.   He got $150 from Gentry, who
represented that company.   Witness was told by Hiram O'Neal
that the property had been sold to Gentry, and witness went to see
Gentry and told him that Hiram owed him (witness) $150, and
he would like for him to pay the money to him.   Witness was not
present at the time of the sale to Stewart, and has entered into no
agreement with the bank since the contract sued on was signed, ob-

ligating himself to become surety for Stewart or O'Neal, or to pay any sum of money for the property in dispute. Witness did not execute the deed at the time the Stewart transaction was made. The deed was afterwards brought to him, and he and his partner signed it. C. J. Simmons, one of the defendants, swore that he had been attorney for the bank practically ever since it was organized, and had attended to nearly all of its business. He drew the contract signed by Hope and himself when the last loan of $2,000 was made to Dinah O'Neal. Witness was never consulted when the sale of the land was made, until after it was over. Gentry came to witness about the title to the land, and told him that he (Gentry) had bought some of the adjoining land some time before that. Witness never saw the deed made by the bank to the land company. Was present at the house of Dinah O'Neal, and remembers the negotiations there entered into, but there was no agreement on the part of witness or of Hope to allow Stewart to become substituted for Dinah O'Neal, or to become surety for Stewart, nor did they waive any release resulting from that transaction. Witness made no agreement to change the contract of suretyship which he had signed, and did not bind himself to make the remaining property of Dinah O'Neal bring the amount of the debt due the Mutual Loan & Banking Company.

1. We have not undertaken in the foregoing to give in detail all the testimony from the voluminous brief embodied in the record before us. We have, however, carefully read all the evidence, and have embraced in the above statement of facts all that we think is material to the issues of the case. It does not appear with any degree of definiteness that these defendants assented to the sale to the Enterprise Land Company of a portion of the land described in their contract of suretyship. Some of the testimony for the plaintiff pointed in this direction, but it was not definite or positive. Both defendants swore positively that they did not consent; but, whether this is true or not, it does appear beyond dispute that the plaintiff received out of the proceeds of the sale $1,200, and that they credited Dinah O'Neal's account with this sum. It further appears from uncontradicted testimony that the bank agreed to allow Stewart to purchase the remainder of the Dinah O'Neal property, in consideration of which agreement Stewart assumed the payment of the balance due upon the debt of Dinah O'Neal to the

bank.  It further appears that soon after this transaction the bank brought suit against Dinah O'Neal and Stewart; but it never obtained any judgment against Dinah, and the record indicates that it abandoned the suit as to her and took a judgment against Stewart and a special lien upon the land sold to him.  There is nothing in the record to authorize the conclusion that either one of the defendants agreed, even verbally, to be responsible as securities or guarantors for the payment of the balance due on this debt by Stewart.  It appears, indeed, that the bank was perfectly satisfied to release Dinah O'Neal and look alone to Stewart for the payment of the balance due on this debt.  The evidence is undisputed that at the time of the sale to him he was perfectly solvent, and was regarded as entirely responsible and able to meet any financial obligation that he might assume.  The bank's claim was reduced to judgment against Stewart, quitclaim deed for the purpose of levy and sale was made to him as defendant in fi. fa., the land was sold as his property and bid in by the bank.  It clearly follows that the two original guarantors were discharged from all liability on their undertaking; and this is true whether the sale to the Enterprise Land Company was made with their consent or not.

2. We do not deem it important to discuss the ground in the amendment to the motion for a new trial.  The original motion was upon the general grounds that the verdict was contrary to law and the evidence, but under the undisputed facts of the case as herein set forth, and the law applicable thereto, the verdict in favor of the defendants was demanded and ought to stand, whether any error of law was committed at the trial or not.  The judgment of the court below is accordingly

*Affirmed.  All the Justices concurring.*